UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDGAR MONTALVO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1377** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.** | **SECTION "K" (1)** |

### ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Rec.Doc.No. 28) seeking dismissal of all claims. Based on the pleadings, memoranda, relevant law as well as the oral argument of the parties on October 4, 2006, the Court finds that Defendant's motion has merit, and is hereby granted dismissing all of Plaintiff's claims.

### I. BACKGROUND

Plaintiff Edgar E. Montalvo was employed with National Finance Center, United States Department of Agriculture. Because Plaintiff's claims under Louisiana tort law, *Bivens* claims, and claims for punitive damages have been dismissed,[1] the instant proceeding involves only Title VII claims – non-selection claims, two claims for hostile work environment based on national origin (i.e., Hispanic) and reprisal, and four claims of retaliatory discrimination. Plaintiff bases

---

[1] *See* Order and Reasons (Rec.Doc.No. 20).

1

these claims on three Equal Employment Opportunity (EEO) administrative complaints: (1) EEO Complaint #CR020578; (2) EEO Complaint #CR030333; and (3) EEO Complaint #CR040215.

      *a.*     *EEO Complaint #CR020578*

In this EEO Complaint, Plaintiff alleges he was subjected to a hostile work environment based upon his race, national origin, sex, and reprisal; however, only issues of national origin and reprisal are currently before the Court. The following issues were raised in this complaint:

> Whether the agency subjected the Complainant to harassment (non-sexual) and discriminated against the Complainant on the basis of race (white), national origin (Hispanic: El Salvador), sex (male) and reprisal for prior EEO activity, creating a hostile work environment when:
>
> 1. His request for annual leave for January 23, 2002, through January 25, 2002, was handled inappropriately by his supervisor;
> 2. On January 28, 2002, he was removed from his responsibility of network vulnerability scan functions held by him since May, 2001. That responsibility was given to the new co-worker (married to a staff employee), who received the necessary training to perform these functions, which the complainant had requested and been denied;
> 3. On February 6, 2002, his supervisor canceled his scheduled and approved leave;
> 4. He applied for a Supervisory Information Technology Specialist, GS-2210-13 position announced under vacancy announcement number NFC-02-042A, and the announcement was subsequently canceled;
> 5. On April 29, 2002, his supervisor attached the contents of the complainant's personal e-mail message in an all-employee policy memorandum;
> 6. On or about April, 2002, he was subjected to disparaging remarks, defamatory and ethnic comments made by his supervisor to him, co-workers and other branch staff members;

      7.      On or about April, 2002, he was denied requested training, meaningful work assignments, and promotion and advancement opportunities;

      8.      He was reassigned and transferred from Thrift Savings Plan (TSP) Division, the Office of Automation Branch (OAB), to the Information System Security Office (ISSO); and

      9.      He applied for the following positions and was not selected:
   1. NFC-02-061, Supervisory Information Technology Specialist, GS-2210-13;
   2. NFC-02-048A, Information Technology Specialist (Security), GS-2210-13;
   3. NFC-98-023, TSP Office of the Director, Programmer Analyst, GS-343-12;
   4. NFC-98-022, TSP Assets Management Branch, Computer Specialist, GS-334-12;
   5. NFC-97-046, ASD, Computer Specialist (Programmer Analyst), GS-334-12;
   6. NFC-96-075, TSP Withdrawals Branch, Computer Specialist, Programmer?

*See* Mot. Summ. J., Exhibit A-1 (Rec.Doc.No. 28).

      b.      *EEO Complaint #CR030333*

Plaintiff's second EEO complaint makes a claim for hostile work environment based upon race, national origin, sex, and reprisal. The following issues were accepted and referred for investigation:

> Whether the Complainant was subjected to a hostile work environment based on his race (White), color (white), national origin (Hispanic/El Salvador), sex (male) and reprisal (prior EEO activity) when his supervisor:
> (1a) hindered his ability to perform his duties by ignoring his repeated requests for adequate network rights;
> (2b) rated him at the fully successful level for the period of October 1, 2001 to September 30, 2002; and
> (3b) continues to adversely impact his advancement opportunities to the GS-13 and above levels?

*See Id.,* Exhibit A-12.

   c.  *EEO Complaint #CR040215*

In his final EEO administrative complaint, Plaintiff contends that he was the victim of retaliation for his prior EEO activity. The following issues were accepted for investigation:

> Whether the agency subjected the complainant to discrimination based on reprisal (prior EEO activity) when:
> 1. it failed or refused to provide him with training from April 2002 to the present, except for the "Users' Conference" on June 23-24, 2003.
> 2. it failed to select him for the positions under Vacancy Announcement Nos. NFC-03-011, NFC-030-013, NFC-03-023 and NFC-03-039;
> 3. on July 23, 2003, he was not provided a cash award;
> 4. on or about October 1, 2003, his supervisor provided information on his prior EEO complaints to the Selection Official with whom he had an interview on October 3, 2003; and
> 5. on May 29, 2003, his Branch Chief told the Acting Supervisor to show favortism to one of his (complainant's) co-workers in reference to training and promotion.

*See Id.,* Exhibit A-16.

## II. LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Id.* To that end, the Court must resolve disputes over material facts in the non-movant's favor.

"The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

### III. ANALYSIS

There are three types of claims that are alleged in the complaint – non-selection, hostile work environment, and retaliation. The Court will discuss each category of claim in relation to the EEO Complaints in which the claim or claims are lodged.

*A.     Non-selection*

To make a prima facie case for non-selection or non-promotion based on national origin discrimination, plaintiff must establish that:

> (1) he belongs to a protected group;
> (2) he was qualified for the position sought;
> (3) he suffered an adverse employment action; and
> (4) he was replaced by someone outside the protected class.

*Price v. Federal Express Corp.*, 283 F.3d 715 (5th Cir.2002). If he can make a *prima facie* case of non-selection, plaintiff must, in order to defeat the motion for summary judgment, raise a genuine issue of material fact as to whether the reasons stated by defendant for non-promotion are pretextual. *Id.* Moreover, Plaintiff may not simply demonstrate that he is similarly qualified. *Id.*

Recent Supreme Court jurisprudence suggests that the test is no longer that the "the

6

disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." *Ash v. Tyson Foods, Inc.*, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006) (*quoting Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004). The Fifth Circuit test was similar to that repudiated by *Ash. Carthon v. Johnson Controls*, 100 Fed. Appx. 993, 997 (5th Cir. 2004) (*citing Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993) (refused to infer pretext unless "[the plaintiff]'s qualifications leap from the record and cry out to all who wold listen that he was vastly – or even clearly – more qualified for the subject job than" the candidate selected."). Under *Ash*, evidence of superior qualifications would simply be probative of pretext. *Id.* The *Ash* decision was not meant to lower the burden; however, it did seek to refocus the a court's inquiry on the question of pretext as opposed to a relative level of the plaintiff's qualifications.

   As a threshold matter, an aggrieved federal employee like Plaintiff must exhaust his administrative remedies before filing a Complaint under 42 U.S.C. § 2000e-16(a)-(e). Accordingly, a plaintiff would have forty-five days from the date of the adverse employment action to consult an EEOC Counselor or his action would be barred. 29 CFR § 1614.105(a)-(a)(1); *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992). The burden to show that an extension of the forty-five days is warranted is on the aggrieved federal employee. 29 CFR § 1614.105(a)(2).

   Plaintiff has not submitted any evidence to suggest that an extension of time would be justified under the circumstances; therefore, those claims of non-selection that were not properly submitted according to Title VII's remedial scheme for federal employees will be dismissed with prejudice.

      *i.*  *EEO Complaint #CR020578*

  Plaintiff contends that there are seven listed positions he was not chosen for because of his national origin (El Salvador/Hispanic): NFC-98-023, NFC-98-022, NFC-97-046, NFC-02-042A, NFC-96-075, NFC-02-061, and NFC-02-48A. Plaintiff contacted the EEO Counselor regarding the first claim of hostile work environment on February 27, 2002. Mot. Summ. J., Exhibit A (Rec.Doc.No. 28). NFC-02-042A was cancelled and re-designated as NFC-02-061, thus, in reality, there are only six claims of non-selection. *See* Mot. Summ. J., Exhibit A, at ¶ 8 (Rec.Doc.No. 28).

  Defendant offers evidence that indicates Mr. Montalvo did not apply for NFC-98-023, NFC-98-022, NFC-97-046. Plaintiff does not suggest otherwise, thus complaints of non-selection with respect to these positions is without merit. Plaintiff was passed over for NFC-96-075 in November of 1996, which was well past the forty-five day time limit. Therefore, this claim is also barred.

  Defendant suggests that the claims for non-selection with respect to NFC-02-061 (previously designated as NFC-02-42A) and NFC-02-48A would also be time barred because the claims were premature, and therefore, untimely. Plaintiff consulted the EEO counselor in February 2002, and Defendant offers evidence which indicates that a decision on either vacancy had not been made. Plaintiff does not make an allegation explaining why he made this claim when no action had yet been taken on the vacancy.

  Pretermitting the untimeliness argument, Plaintiff cannot establish a *prima facie* case for non-selection for these two positions, NFC-02-061, Supervisory Information Technology

Specialist and NFC-02-048A, Information Technology Specialist (Security). Defendant offers

the following explanation for non-selection:

> NFC-02-048A for Supervisory IT Specialist was cancelled because
> the initial posting was NFC only instead of for the New Orleans area.
> [Cynthia McCool] issued the April 23, 2002 letter to the complainant
> and other applicants informing them of the cancellation and re-announcement under NFC-02-061. As for NFC-02-061, an employment decision

had not been made by October 10, 2002.

*See* Mot. Summ. J., Exhibit A-2 (Rec.Doc.No. 28).

The Court finds that there is not a genuine issue as to a material act with respect to

Plaintiff's non-selection for NFC-02-048A and NFC-02-061. Plaintiff failed to establish that the

vacancies went to someone outside his protected class, or that he was even qualified for these

positions. Moreover, Plaintiff does not supply the Court with one specific charge or allegation

suggesting even the remote possibility that Defendant's actions were pretext for discrimination.

Even when afforded with the additional opportunity to supply the Court with specific factual

allegations in support of his claim, Plaintiff failed to do so.[2]

                ii.        EEO Complaint #CR03033

---

[2] The Court heard oral argument on the Motion for Summary Judgment (Rec.Doc.No. 20) on October 4, 2006. Out of an abundance of caution, the Court allowed Plaintiff to submit additional briefing specifically to address some of the concerns of the Court. Namely, the Court instructed Plaintiff's counsel to offer specific factual allegations in support of the Title VII claims. Counsel for Plaintiff filed the additional briefing; however, it is devoid of any factual allegations that would give credence to the Title VII claims.

This complaint alleges a hostile work environment based on stalling career advancements as evidenced by non-selection for the positions NFC-02-061 and NFC-02-048A, discussed above. Plaintiff sought EEO counseling on December 20, 2002.

Defendant suggests that for NFC-02-048A, a selection was made on August 14, 2002. *See* Mot. Summ. J., p. 10 (Rec.Doc.No. 28). Similarly, as for NFC-02-061, a selection was made on February 12, 2003, thus, the reiterated claims of hostile work environment based on non-selection would be untimely in this Complaint.

Disregarding the timeliness argument,[3] the Court finds for the same reasons above that Plaintiff cannot establish a *prima facie* case for non-selection with respect to NFC-02-061 or NFC-02-048A because he has made no showing that he was either qualified for the position or that the positions went to someone outside the protected class.

      iii.      EEO Complaint #CR040215

---

[3] As for NFC-02-048A, there is self-contradictory evidence offered by Defendant suggesting that no employment decision was made as of October 10, 2002, but that a final selection had been made in August 2002. Plaintiff makes no allegation to suggest the claims were timely, other than to suggest an inapplicable equitable tolling remedy under the Administrative Procedure Act. *See* Mem. Opp. Mot. Summ. J., (Rec.Doc.No. 46). Out of an abundance of caution, the Court analyzes this claim as if it were timely.

10

Plaintiff also brings non-selection claims in his third EEO Complaint alleging that he was the not selected based on his prior EEO activity. Plaintiff contacted an EEO counselor in regard to the retaliation allegations on September 5, 2003. There are four job vacancies referred to in the allegation of non-selection: NFC-03-013, NFC-03-011, NFC-03-023, and NFC-03-039. The first three were respectively filled on April 24, 2003, May 5, 2003, and May 19, 2003. Plaintiff contacted the EEO counselor after the forty-five day window had elapsed; thus, these claims are time barred. However, as to the fourth vacancy, Defendant suggests that the job was cancelled on October 16, 2003, well after the Plaintiff's consultation day. Again, Plaintiff's claim was premature in that the job was not filled until after he consulted the EEO counselor.

Regardless of the timeliness issue, Plaintiff fails to make a *prima facie* claim of non-selection for NFC-03-039. There is no factual allegation that he was qualified for this position, or that it was filled by someone outside the protected class. Thus, the Court finds that Plaintiff's non-selection claims fail, and Defendant's motion for summary judgment is granted with respect to this issue.

### B.     *Hostile Work Environment*

Plaintiff brings hostile work environment claims alleging that the harassment resulted in adverse employment actions and that the harassment was so severe and pervasive as to affect conditions of employment. In order to establish a prima facie case for a hostile work environment claim, a plaintiff must allege or produce evidence that shows: (1) he belongs to a protected class, (2) he was subjected to unwelcome [sexual, racial, age] harassment, (3) the

harassment was based on [a protected characteristic], (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Green v. Administrators of Tulane Educational Fund*, 284 So.2d 642 (5th Cir. 2002); *Mota v. Univ. of Tex. Houston Health Science Ctr.,* 261 F.3d 512, 523 (5th Cir.2001). *See also Broadway v. Dep't of Homeland Security,* 2005 WL 1400452, (E.D. La. Jun. 2, 2005)(Duval, J.).

As the Court has stated before, the Plaintiff must show that the harassment either culminates in an adverse employment decision or that the conduct was so severe and pervasive as to affect a condition of employment. *Marks v. Shaw Contractors,* 2001 WL 1426649 (E.D. La. Nov. 13, 2001)(Duval).The Court has previously described the hostile work environment claim absent a showing of adverse employment decision:

> The purpose of a claim for hostile work environment is to "level the playing field for [those in a protected class] who work by preventing others from impairing their ability to compete on an equal basis with [co-workers]. *De Angelis v. El Paso Municipal Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir.1995). A claim for hostile environment "embodies a series of criteria that express extremely insensitive conduct so egregious as to alter the conditions of employment and to destroy equal opportunity in the work place." *Id.*
> To be actionable, the challenged conduct must create an environment that a reasonable person would find hostile or abusive. *Farpella Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir.1996). Whether the environment is hostile or abusive depends upon "the totality of the circumstances." *Id.* All the circumstances must be considered including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *De Angelis v. El Paso Municipal Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir.1995). A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in the protected class. *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310 (2d Cir.1999). "In other words, an environment which is equally hostile

> for both men and women ⋯ does not constitute a hostile environment⋯." *Id.*
>
> Additionally, the [illegal] harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment. *Farpella-Crosby,* 97 F.3d at 806. The "mere utterance of an ⋯ epithet which engenders offensive feelings in an employee" is not alone sufficient to support Title VII liability. *Id.* Further, [neutral] hostile conduct cannot be used to support a hostile environment claim. *Id.* at n. 2. Title VII does not protect employees from hostile conduct that is not based upon their protected status. *Id.*

*Giardina v. Lockheed Martin, Corp.*, 2003 WL 21634934, at *3-4 (July 3, 2003).

For the first claim of hostile work environment, the question is whether the following is severe and pervasive harassment that affects a term, privilege, or condition of employment:

1. His request for annual leave for January 23, 2002, through January 25, 2002, was handled inappropriately by his supervisor;
2. On January 28, 2002, he was removed from his responsibility of network vulnerability scan functions held by him since May, 2001. That responsibility was given to the new co-worker (married to a staff employee), who received the necessary training to perform these functions, which the complainant had requested and been denied;
3. On February 6, 2002, his supervisor canceled his scheduled and approved leave;
4. He applied for a Supervisory Information Technology Specialist, GS-2210-13 position announced under vacancy announcement number NFC-02-042A, and the announcement was subsequently canceled;
5. On April 29, 2002, his supervisor attached the contents of the complainant's personal e-mail message in an all-employee policy memorandum;
6. On or about April, 2002, he was subjected to disparaging remarks, defamatory and ethnic comments made by his supervisor to him, co-workers and other branch staff members;
7. On or about April, 2002, he was denied requested training, meaningful work assignments, and promotion and advancement opportunities;
8. He was reassigned and transferred from Thrift Savings Plan

13

> (TSP) Division, the Office of Automation Branch (OAB), to the Information System Security Office (ISSO); and...

*See* Mot. Summ. J., Exhibit A-1 (Rec.Doc.No. 28).

The Court finds that none of Plaintiff's claims taken individually or together establish a prima facie case for harassment because they do not constitute severe and pervasive conduct. In fact, only Item #6 of the above alleged acts of discriminatory conduct is racial in character. This allegation clearly does not rise to the level of severe and pervasive conduct. Rather, it can be characterized as a mere offensive utterance, which does not warrant recovery.

The Court emphasizes again that it gave Plaintiff's counsel the additional opportunity to address the Court's concerns with the lack of specificity in its opposition to the motion for summary judgment. Thus, the Court finds that there is no genuine issue of material fact as to whether Defendant would be entitled to judgment as a matter of law as to this first claim of harassment.

Defendant also submits the affidavit of Mr. Zeringue, which further undermines the harassment claim. *See* Mot. Summ. J., Exhibit A-3 (Rec.Doc.No. 28). Mr. Zeringue's affidavit is specific and non-conclusory, in that, he explains why the leave requests were denied. *Id.* For example, Mr. Zeringue explains that he did not approve the leave request of January 2002 because Plaintiff had not accumulated enough hours according to the guidelines. *Id.* An additional supervisor concurred in this decision.

Plaintiff is silent in response to these reasons proffered by Defendant. Mr. Zeringue's affidavit provides the Court with detailed explanations of each allegation made in the first claim of harassment. Plaintiff does not offer a different version of any of these explanations, but rather, stands on the allegations made in the Complaint. On its face, the allegations do not rise to the level of severe and pervasive. Mr. Zeringue's affidavit further undermines the veracity of the allegations,

and given the Court's request to Plaintiff to offer such contrary evidence, the Court finds that Plaintiff's claim of harassment fails to establish a *prima facie* case for discrimination.

As for the second claim of hostile work environment, the test articulated in *Giardina* applies to the following:

> Whether the Complainant was subjected to a hostile work environment based on his race (White), color (white), national origin (Hispanic/El Salvador), sex (male) and reprisal (prior EEO activity) when his supervisor:
> (1a)  hindered his ability to perform his duties by ignoring his repeated requests for adequate network rights;
> (2b)  rated him at the fully successful level for the period of October 1, 2001 to September 30, 2002; and [performance appraisal]
> (3b)  continues to adversely impact his advancement opportunities to the GS-13 and above levels?

*See Id.,* Exhibit A-12.

This claim fails for the same reasons that the first harassment charge is without merit. The allegations simply do not raise an inference of discrimination, and clearly do not rise to the level of severe and pervasive. Mr. Zeringue's explanations of each of these charges further undermines the veracity of the allegations. *See* Mot. Summ. J., Exhibit A-13 (Rec.Doc.No. 28). For example, he attaches an email, in which it specifically requests full network rights for Mr. Montalvo. *Id.* This email was sent in May of 2002, and this particular charge was not made until December of the same year. In any case, Plaintiff offers no specific reasons to create even a small inference that these actions were discriminatory, much less than severe and pervasive conduct. Thus, the Court finds that Plaintiff's harassment claim is also without merit.

    C.    *Retaliation*

In EEO Complaint #CR040215,[4] Plaintiff brings four claims for reprisal because of protected activity (i.e. previous EEO complaints)(1) failure to train; (2) failure to provide Plaintiff with a cash award, (3) Plaintiff's supervisor notifying a Selection Official with whom he had an interview of his prior EEO complaints; and (4) unwarranted favoritism to a co-worker with respect to training and a promotion.

To prevail on these retaliation claims, Plaintiff would have to establish that: (1) the activity engaged in by the plaintiff is protected under Title VII; (2) plaintiff was subjected to an adverse employment action; and (3) there is a causal link between protected activity and the adverse employment action. *Douglas v. DynMcDermott Petroleum Operations Co.,* 144 F.3d 364, 372 (5th Cir. 1998); *See also Giardina*, 2003 WL 21634934, at *10.

The U.S. Supreme Court recently held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 126 S.Ct. 2405, 2415 (2006)(citations omitted).

As Defendant points out, the *Burlington* court adopted the Seventh and D.C. Circuits interpretation of adverse employment action and rejected the holdings of circuits such as this one, which employed an ultimate employment action standard and only regarded hiring, granting leave, discharging, promoting, and compensation as actionable under Title VII. *Id.* at 2410; *see also Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir. 1997). In this way, the scope of what is

---

[4] The non-selection claims based on retaliation for prior EEO activity are addressed above in part III(A)(ii) of this opinion.

considered actionable in the Fifth Circuit has been expanded considerably.[5]

While there would be a question in the Fifth Circuit as to whether the conduct of Defendant here would constitute an adverse employment action, the Court need not address these issues because Plaintiff's claim fails to establish causation as to all of these claims.

      *i.*    *Training*

Plaintiff contends that Defendant failed to train him; however, Plaintiff offers no evidence indicating what training he sought and why it should have been afforded to him, which therefore, raises no genuine issue of material fact as to his denial of training was because of retaliation. The Court, in particular, requested factual specificity with respect to this claim at oral argument.

      *ii.*    *Cash Award*

Moreover, with respect to the cash reward, Plaintiff offers no evidence suggesting why he was entitled to this reward, how much the award was for, and the circumstances which could indicate that he was improperly denied these benefits. Thus, no reasonable factfinder could conclude that he was improperly denied this award based on the sparse allegations supplied by Plaintiff. The

---

[5] Defendant still argues that a discretionary bonus is not materially adverse under Seventh Circuit jurisprudence. *See Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th cir. 1996). Moreover, Defendant also relies on Seventh Circuit jurisprudence to contend that failing to train is not materially adverse. *See Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 688 (7th Cir. 2003).

Court again requested factual specificity with respect to this claim at oral argument. Plaintiff's counsel wholly failed in complying with this request.

### iii. Telling about EEO Complaint to Interviewer

The last two retaliation claims fail for the same reasons. Plaintiff makes a claim that Mr. Zeringue told a selection official of Plaintiff's prior EEO Complaints, and a claim that a co-worker received unwarranted favoritism with respect to training and promotion. Again, the specific factual details are wholly absent. Defendant offers that no one was selected for the position for which Mr. Montalvo interviewed.[6] Even a contradicting narrative of the circumstances surrounding these events would be helpful to the Court; however, Plaintiff does not offer any such evidence. In this way, Plaintiff fails to make a *prima facie* showing that the retaliation was because he engaged in protected activity and that any alleged retaliation resulted in an adverse employment action because no one was selected for the position.

### iv. Favortism

With respect to the favoritism, Plaintiff never explains why he deserved the additional training and/or promotions, what these additional benefits were, or why favoring another employee is evidence of retaliation. Defendant offers that Donna King did not receive any favoritism, but only

---

[6] Statement of Mr. Bertrand: "As I recall, one of the candidates on the HRMS list had one of the required credentials. But before I completed the interviews and selection, that person had accepted another job. If I recall correctly, none of the other candidates had any of the required certifications, including the Complainant. So, I had HRMS send the recruitment to [Office of Personal Management]." *See* Mot. Summ. J., Exhibit A-21 (Rec.Doc.No. 28). Mr. Bertrand further explains that OPM sent over an additional list and an offer was made, but that person declined. *Id.*

that she attended certain sessions upon request, and that Defendant is not aware that Plaintiff even requested these benefits. *See* Mot. Summ. J., Exhibit A-23 (Rec.Doc.No. 28). Plaintiff is silent as to this claim, and offers nothing to show that he requested such benefits, that he was denied such benefits, or that he did not receive the benefits out of retaliation for protected activity. Consequently, the Court finds that Plaintiff's claims of retaliation due to protected activity are without merit and are hereby denied. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec.Doc.No. 28) is **GRANTED**, and the action against Defendant is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, on this 27th day of November, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**